

**Decided July 24, 1981**

166

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW, individually ) CIVIL ACTION NO. 80-0021
and as Public Auditor for the )
Commonwealth of the Northern )
Mariana Islands, )
)
 Plaintiff, )
)
 vs. ) FINDINGS OF FACT AND
) CONCLUSIONS OF LAW
CARLOS S. CAMACHO, in his capacity )
as Governor of the Commonwealth of )
the Northern Mariana Islands; SAUL )
A. NEWMAN, in his capacity as )
Director of Finance for the Common- )
wealth of the Northern Mariana )
Islands and THE GOVERNMENT OF THE )
COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS, )
)
 Defendants. )
_____)

. FINDINGS OF FACT AND CONCLUSIONS OF LAW

 This matter is before the Court for a decision on the
merits following trial on March 25, 1981. Plaintiff brings
this action under 48 U.S.C. 1694a(b), 48 U.S.C. 1694a(a) and
42 U.S.C. 1983 to recover damages allegedly resulting from
breach of plaintiff's employment contract, violation of his
constitutional rights under the First, Fifth and Fourteenth
amendments of the United States Constitution, and violation

of his civil rights under 42 U.S.C. 1983.

 The Court took under advisement plaintiff's motion to
enter judgment against defendant SAUL A. NEWMAN who was
subpoenaed but did not appear for the trial. For the reason
that defendant NEWMAN was sued in his official capacity and
has since resigned, and for the reason that he was rightfully
executing the duties of his office during the period in which
this action arose, the Court DENIES plaintiff's motion to
enter default judgment against defendant NEWMAN.

Having considered the pleadings, trial testimony, exhibits, stipulations of the parties, briefs, and applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any findings of fact equally applicable as a conclusion of law is hereby adopted as such and conversely any conclusion of law applicable as a finding of fact is adopted as such.

## FINDINGS OF FACT

1. The plaintiff is a Certified Public Accountant, licensed and certified by the State of Oklahoma.

2. On January 18, 1979, plaintiff ROBERT D. BRADSHAW was appointed Acting Public Auditor by defendant Governor CARLOS S. CAMACHO. Plaintiff's salary commenced immediately at the rate of $1,153.85 bi-weekly, or $30,000 per annum.

3. On April 15, 1979, plaintiff was confirmed by both houses of the Commonwealth legislature, and became the first Public Auditor for the Commonwealth pursuant to Article III, Section 12 of the Commonwealth Constitution,

4. On April 23, 1979, plaintiff prepared and submitted for signature a Personnel Action Request form, a copy of which was introduced and admitted at trial as plaintiff's

Exhibit 2. The request was approved and signed by Acting Governor Francisco C. Ada, inasmuch as defendant Governor CAMACHO was off-island.

5. The Commonwealth, through acting governor Francisco. C. Ada, (Lieutenant Governor of the Commonwealth) in his official capacity, authorized Personnel Officer Jesus P. Mafnas to execute an employment contract (Prime Contract) between the government and the plaintiff. See plaintiff's Exhibit 2, Request for Personnel Action. Standard Form 52.

168

6. On April 26, 1979, the plaintiff, through the Personnel Officer for the Commonwealth, Jesus P. Mafnas, entered into an employment contract with the Commonwealth for a period of two years, renewable for two additional two-year periods at plaintiff's option. The effective date of the contract was retroactive from January 18, 1979. See plaintiff's Exhibit 1, introduced and admitted at trial.

7. Plaintiff intended to exercise the renewal provision under the Employment Contract so that there is presently an existing two-year contract (January 18, 1981 to January 17, 1983) between plaintiff and the Government.

8. The Employment Contract was entered into pursuant to Public Law 1-8 and Article III, Section 12 of the Commonwealth Constitution.

9. The tenure of employment for the Public Auditor under Public Law 1-8 is for six years.

10. Plaintiff BRADSHAW and Personnel Officer Jesus P. Mafnas made numerous hand-written amendments to the employment contract form (Plaintiff Exhibit 1, GNMI Form 331 A) in order for it to be consistent with Public Law 1-8 and Article III, Section 12 of the Constitution.

11. Both of the parties of the employment contract intended that the provisions of the Constitution should control their agreement, and that plaintiff could be removed only by the Legislature, pursuant to Article III, Section 12 of the Constitution. To this date neither house of the Legislature has voted to remove plaintiff from office.

169

12. The parties executing plaintiff's employment contract intended the language "the Government is the sole judge" (Plaintiff's Exhibit 1, GNMI Form 331, paragraph 2 of page 2) to mean the legislative branch of the government.

13. Plaintiff substantially performed his duties and obligations under the employment contract through April 9, 1980. To the extent plaintiff has not performed his duties, he has been prevented administratively by SAUL A. NEWMAN and financially by CARLOS S. CAMACHO from so performing.

14. Since April 9, 1980, plaintiff has not received payment of his salary from the Government as provided for in the employment contract, the reason being the Governor's veto on April 9, 1980, of appropriations in the budget bill (Public Law 2-1) for the Office of the Public Auditor.

15. Defendant Governor CAMACHO's veto was exercised pursuant to Article II, Section 7(a) of the Constitution, which empowers the Governor to veto "every" bill or "any" item therein.

16. The budget bill became law (Public Law 2-1) without provisions for plaintiff's salary, or the operation of his office.

17. The provisions in Article III, Section 12 of the Constitution, providing for legislative removal of the Public Auditor, do not in any way limit, restrict or invalidate the Governor's power to veto appropriations for the Office of the Public Auditor.

170

18. The contents of the "veto statement" constitute official publications of the Governor and are within the scope of his official duties.

19. Defendant Governor CAMACHO executed his power of veto towards the plaintiff, and disapproved appropriations for the Office of the Public Auditor only because he considered the present policies of the Office to be harmful and detrimental to the operations of the Commonwealth government.

20. Defendant Governor CAMACHO's veto of appropriations for the Office of the Public Auditor on the other hand emasculated the Employment Contract entered into between the plaintiff and the Commonwealth.

21. Defendant Governor CAMACHO intended to remove the plaintiff from office when he vetoed the appropriations for the Office of Public Auditor on April 9, 1980.

22. Although the legislature has never voted to remove the plaintiff from his office the Court is cognizant of the fact that the House started its investigation and evaluation of plaintiff's performance approximately nine months after the governor vetoed appropriations for plaintiff's office.

23. There is no employment available to plaintiff in the Commonwealth comparable to the position of Public Auditor.

24. There have been salary adjustments of various departmental heads from April 9, 1980 until March 25, 1981 (the date the trial commenced).

25. The legislature did not override the Governor's veto of the appropriations for the Office of Public Auditor.

CONCLUSIONS OF LAW

Jurisdiction

The Court has jurisdiction over this matter under Title 48 United States Code § 1694a(b) and Title 6 Trust Territory Code § 251(1)(c).

The plaintiff alleges four causes of action against defendants in this case: (1) breach of contract, (2) violation of the Commonwealth Constitution, specifically Article III, Section 12, (3) violation of Commonwealth Public Law 1-8 and (4) violation of plaintiff's civil rights under 42 U.S.C. § 1983.

The Court took under advisement defendants' motion to dismiss plaintiff's fourth cause of action during the trial. After having reviewed the records herein and the briefs submitted by counsel in support of and in opposition to the motion, and after having heard the testimony of defendant CARLOS S. CAMACHO, the Court concludes as a matter of law that there has been no violation of plaintiff's constitutional rights. The Court hereby GRANTS defendants' motion to dismiss plaintiff's fourth cause of action. A supplemental memorandum which sets forth the Court's reasons for dismissing plaintiff's § 1983 action will be filed following this decision.

█ As to plaintiff's second and third causes of action,
the Court concludes as a matter of law that the defendant
Governor CAMACHO lawfully vetoed appropriations for the Office
of the Public Auditor. The power of the governor to strike
by item veto appropriations for ·certain executive òffices
(offices of Governor and Lieutenant Governor) specifically
created by the Organic Act of·Guam has been upheld by the
Court of Appeals for .the Ninth Circuit. See Thirteenth Guam
Legislature v. Bordallo, 430 F.Supp. 405 (D.C. Guam 1977);
affirmed 588 F.2d 265 (9th Cir, 1978); Blanch v. Cordero, 180
F.2d 856 (1st Cir. 1950).

The plaintiff contend that Bordallo can be distinguished
from this case because the Organic Act of Guam and ·the Common-
wealth Constitution are not similar documents. Plaintiff insists
that the case of State ex rel. Brotherton v. Blankenship, 207
S.E.2d 421 (W.Va. 1973) is more squarely in point than Bordallo.
I believe the plaintiff's contention is erroneous. The plaintiff,
glaringly ignores the thoughtful and incisive opinion rendered
by Judge Orrick in Bordallo concerning the chief executive's
veto power. Judge Orrick's preface to his analysis of the veto
power clearly points out that what is at issue in Bordallo tran-
scends the disputed provisions of the Organic Act:

·II

> While this decision is grounded primarily
> on analysis of Guam's veto provisions and case
> law construing similar statutes, it was not made
> without reference to the historical evolution of
> the veto power. This development both provides
> a context in which to examine the present problem
> and suggests the permissible bounds within which
> the power may operate.

430 F.Supp. at 407.

While I agree with plaintiff that _Blankenship_ was not overruled by _Bordallo_ for the simple reason that the District Court of Guam would not have any jurisdiction of an action involving interpretation of the West Virginia constitution, I am inclined to follow the more authoritative reasoning of _Bordallo_ rather than the insufficient analysis provided in _Blankenship_.

 This Court will not hesitate to review the governor's action when he has clearly abused his discretion in exercising veto authority over the executive budget. However in this instance, the Court concludes that the governor's veto of the funds for plaintiff's office was not in excess of his constitutionally granted powers. The constitutional status of plaintiff's office does not shield it from legislative or gubernatorial regulation of appropriations under Article II, Section 7 of the Commonwealth Constitution.

I would like to emphasize that the Governor's veto power is not necessarily the determinative factor in the appropriation process. This Court stated in _Atalig v. Camacho_ (D.C. No. Marianas Civ. No. 80-0011);

> The exercise of executive veto does not, of course, signal the death knell to legislative appropriations. Those bills or items thereof that have been vetoed must be timely returned to the presiding officers of each house of the legislature with a statement of the reasons for the veto, otherwise such bills or items become law. Even if timely returned, any bill or item may still become law if two-thirds of the members of each house vote upon reconsideration to override the governor's veto. (citation omitted)

Memorandum Decision and Order at 7-8.

In the present case, the legislature had more than what would have been sufficient time to reconsider the

Governor's veto.[1] The Court is now compelled, under the present factual posture of the case, to resolve the dispute over the plaintiff's employment contract.

## Breach of Contract

The Restatement of Contracts § 312(1932)[2] provides the following definition of a breach of contract:

> A breach of contract is a non-performance of any contractual duty of immediate performance. A breach may be total or partial, and may take place by failure to perform acts promised, by prevention or hindrance, or by repudiation.

There is no question here that the parties, upon entering into a valid employment contract, have an obligation to each other to perform what the contract requires. The government as promisor, is obligated to pay plaintiff, the promisee, his bi-weekly salary for a period of two years in return for plaintiff's services as Public Auditor. The plaintiff had been tendering his services and receiving his regular salary

- - - - - - - - - -

[1] This Court granted defendant's motion to dismiss in Atalig on the ground that the legislative process had not been given sufficient time to run its course. The present factual posture of the case dictated that the Court dismiss the action on the ground that the issues involved a political question. In the instant case, nearly a year had passed from the date the suit was filed, and yet the legislature had not acted on the vetoed appropriation for the plaintiff's office. Furthermore, plaintiff here alleges a cause of action (breach of employment contract) not pleaded in the Atalig complaint.

[2] Made applicable to the Northern Marianas by the Schedule on Transitional Matters, Section 2 (Continuity of Laws) of the Commonwealth Constitution and 1 T.T.C. § 103.

up until April 9, 1980, the date the Governor vetoed the appropriations for the Office of the Public Auditor, which included plaintiff's salary. As a result of the veto the Government was unable to perform its end of the bargain. The Legislature, not having taken any action to override the Governor's item veto, allowed the appropriation bill to become law without a single penny appropriated to the Office of the Public Auditor. The Governor thereafter issued a memorandum to the Director of Finance, co-defendant SAUL A. NEWMAN, ordering him not to expend public funds for salary and expenses or other obligations incurred by the Office of the Public Auditor as of April 9, 1980.

The defendants contend that the Governor rightfully exercised his authority in ordering the Director of Finance not to expend public funds which were unappropriated in the budget. The Court agrees with the Governor's position as far as plaintiff's case against him is concerned. Counsel for the Government, however, also contend that the Government is justifiably excused from performing because it was prevented by the Governor's veto. It follows, of course, that if the Government's non-performance is indeed justifiable, then there is no breach. Restatement of Contracts § 314; 312, Comment a (1932).

Section 295 of the Restatement of Contracts (1932) sets out what would constitute an excuse of condition by prevention or hindrance.

> If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused, and the actual or threatened non-performance of the return promise does not discharge the promisor's duty, unless

176

(b) the terms of the contract are such that the risk of such prevention or hindrance as occurs is assumed by the other party.
(emphasis added)

The condition in this case, of course, is the availability of funds; the promisor is the Government, and the other party and promisee is the plaintiff.

The Government, represented by the Office of the Governor which in turn delegated its authority (to prepare an employment contract) to the Personnel Officer, promised to pay plaintiff a bi-weekly salary in return for plaintiff's services. As promisor, the Government is bound to pay plaintiff for his services until the expiration of the contract or until he is removed from office. Plaintiff was satisfactorily tendering his services until the Governor vetoed appropriations for his office. To the extent that plaintiff has not performed his work satisfactorily, he was prevented from doing so by the Government when the executive branch vetoed appropriations for his office and the legislative branch failed to override the veto or to resubmit another appropriation bill. Had the employment contract provided that funding for plaintiff's office would be subject to an appropriation bill, it would be reasonable to infer that he assumed the risks of such contractual language. The contract contained no such condition.

It is true that plaintiff, as a government employee, knew or should have known that his salary, regardless of his personal employment contract, would have to be paid

177

from properly appropriated and enacted public funds.[3] Nevertheless the Court holds that he has the right to enforce the terms and conditions of his employment contract where he did not assume the risk of non-appropriation in the contract. Thus, plaintiff's non-performance of his duties, as a result of the veto, does not discharge the Government's duty to pay him under the terms of the contract.

The breach of plaintiff's employment contract is a total breach of both his initial two-year employment contract and the two years of the four-year option that he has under the contract. As far as his claim for future damages for the last two year option is concerned, plaintiff is precluded from any award of future damages at this time for two reasons: (1) he is still the Public Auditor and the availability of funds for the Office of the Public Auditor for the remaining term of his contract is not totally out of the question at this time; and (2) the outcome of the present legislative removal proceeding in the House of Representatives could affect his claim for the last two-year renewal option.

 The Court is satisfied that plaintiff need not accept any employment outside of the commonwealth in order to mitigate

- - - - - - - - - -

 [3] It is a generally accepted proposition that appointed public officials are not guaranteed their salaries during their tenure for the reason that their salaries are subject to periodic appropriations by the legislature. However, a public official who enters into a contract with one of the branches of the government for a stipulated salary for his services during a limited period is in a similar position as a private citizen entering into a contract with another citizen. As the United States Supreme Court pointed out in Hall v. State of Wisconsin, 107 U.S. 5, 26 L.Ed. 302 (1880):

> When a State descends from the plane of its sovereignty, and contracts with private persons, it is regarded pro hac vice as a private person itself, and is bound accordingly.

his damages or to seek employment other than as a public auditor.

The Court denies plaintiff's claim of salary increase or adjustments because said increase was not proved by preponderance of the evidence.

## Damages

█ Plaintiff is entitled to recover the salary due under his initial two-year contract plus his salary for the next two-year contract. Plaintiff is also entitled to recover the fringe benefits or their monetary equivalent provided for in the contract under the travel, transportation and moving clause (4.1) of the employment clause.

The Court finds plaintiff's damages as follows:

(1) SALARY

 (a) Due and unpaid from April 9, 1980 until April 9, 1981 . . . . . . . . $ 30,000.00 less proper authorized deductions

 (b) Salary from April 10, 1981 until January 17, 1983 (termination date of the second two-year contract) 46 payperiods x $1153.85 . . 53,077.10 less proper authorized deductions

(2) ACCRUED LEAVE from April 9, 1980 until January 17, 1983 (72 payperiods x 8 hrs./payperiod = 72 days; 72 x $115.38/day) . . . . . . . . . 8,307.36

(3) RETURN TRIP to the U.S. between contracts (one roundtrip at $1,810.00) 1,810.00

(4) HOUSING BENEFITS (monthly allowance for two years at $375.00 per month; 24 mos. x $375.00). . . . . . . . . 9,000.00

 TOTAL $102,194.46

The award of damages under (1)(b), (2) is contingent upon

179

plaintiff not receiving fully enacted appropriations for his office or authorization by the Legislature of his salary for the second two-year contract.

Judgment shall be entered on these findings of fact and conclusions of law for the plaintiff for his first cause of action.

Each party is to bear its own costs herein.

DATED: Saipan, Northern Mariana Islands this 24th day of July, 1981.

_____
ERNEST GIANOTTI
Designated Judge